UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

DESMON GOINS,

                              Plaintiff,

              -against-

CITY OF NEW YORK, ROBERT MARTINEZ, Individually,
DAVID PRALGO, Individually, RADOSLAW TEREPKA,
Individually, and THOMAS NAPOLITANO, Individually,

                              Defendants.

--------------------------------------------------------------------------------X

**COMPLAINT**

Docket No.:

       Plaintiff DESMON GOINS, by his attorneys, the Leventhal Law Group, P.C., complaining of the defendants, respectfully alleges as follows:

## **Preliminary Statement**

1.    Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States.

## **JURISDICTION**

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## **VENUE**

4.    Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.     Plaintiff DESMON GOINS is a thirty-four-year old African-American man residing in Brooklyn, New York.

7.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant CITY OF NEW YORK maintains the New York City Police Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.     That at all times hereinafter mentioned, the individually named defendants ROBERT MARTINEZ, DAVID PRALGO, RADOSLAW TEREPKA, and THOMAS NAPOLITANO were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

2

## FACTS

12.    On October 16, 2013, at approximately 4:00 a.m., plaintiff DESMON GOINS was lawfully present in front of his home, located at 8 Van Siclen Court, Brooklyn, New York, with his cousin, Montae Jackson.

13.    At the aforementioned time and place, an unmarked police vehicle arrived at GOINS' home and defendants RADOSLAW TEREPKA and THOMAS NAPOLITANO exited said police vehicle.  TEREPKA approached GOINS and Jackson, and NAPOLITANO approached another individual who was across the street from 8 Van Siclen Court.

14.    Shortly thereafter, another unmarked police vehicle arrived, and defendants DAVID PRALGO and ROBERT MARTINEZ exited that vehicle.  PRALGO approached GOINS and Jackson, and MARTINEZ approached said individual who was across the street from 8 Van Siclen Court.

15.    GOINS informed TEREPKA that he lived at 8 Van Siclen Court, and asked, in sum and substance, what was going on.

16.    PRALGO stated to GOINS and Jackson, in and substance, just do me a favor and stand over there.

17.    GOINS and Jackson stood where PRALGO directed them, which was close to GOINS' father's minivan which was parked in front of 8 Van Siclen Court.

18.    TEREPKA repeatedly asked GOINS where he lived and GOINS repeatedly responded, in sum and substance, that he lived at 8 Van Siclen Court, the house they were standing in front of.

19.    PRALGO and TEREPKA asked GOINS and Jackson if they could frisk them, and both GOINS and Jackson consented.

20.     PRALGO then frisked GOINS and searched inside GOINS' pockets, while TEREPKA frisked and searched Jackson.

21.     Neither GOINS nor Jackson possessed any illegal contraband or evidence of criminality.

22.     GOINS then asked PRALGO and TEREPKA, in sum and substance, what is the problem, what is the probable cause?

23.     PRALGO and TEREPKA then told GOINS, "Shut up."

24.     TEREPKA again asked GOINS where he lived and GOINS replied, in sum and substance, this is my home, I live right here.

25.     PRALGO and TEREPKA then asked to frisk GOINS and Jackson again, and both GOINS and Jackson consented.  PRALGO and TEREPKA then frisked and searched GOINS and Jackson a second time.

26.     GOINS again asked, in and substance, what is the probable cause for the frisk and search?

27.     TEREPKA then asked to search GOINS and Jackson a third time, and GOINS again asked, in sum and substance, what is the probable cause for the search?

28.     TEREPKA then told GOINS and Jackson to turn around and to place their hands on GOINS' father's minivan.

29.     GOINS then stated to defendant TEREPKA, in sum and substance, there is no reason to search us a third time, what is the probable cause?

30.     TEREPKA then yelled at GOINS, "Shut up."

31.     PRALGO then violently pushed GOINS in the chest with both his hands, causing GOINS' back to slam into said minivan and causing a dent in the minivan's door.

32.     Shortly thereafter, TEREPKA grabbed GOINS' right arm with both of his hands and GOINS stated, in sum and substance, what are you doing?

33.     MARTINEZ and NAPOLITANO, who were across the street, then approached PRALGO, TEREPKA, and GOINS.

34.     MARTINEZ punched GOINS in the face, causing physical injuries that included bruising and swelling to GOINS' left eye socket and left cheek.

35.     MARTINEZ, PRALGO, and TEREPKA then slammed GOINS down to the sidewalk in front of 8 Van Siclen Court.

36.     While down on the sidewalk, MARTINEZ stepped on GOINS' face and pushed GOINS' face into the pavement with his boot, causing physical injuries that included a large abrasion to GOINS' left cheekbone and bruising and swelling to the right corner of GOINS' lip.

37.     As MARTINEZ was grinding GOINS' face into the pavement with his boot, PRALGO and TEREPKA handcuffed GOINS with his hands behind his back.

38.     All of the aforementioned unlawful acts of MARTINEZ, PRALGO, and TEREPKA occurred in the presence of NAPOLITANO, who did nothing to stop them and thus failed to intervene on behalf of GOINS.

39.      Thereafter, PRALGO and MARTINEZ imprisoned GOINS in the back of a police vehicle while rear handcuffed.

40.     The defendant officers caused GOINS to be transported to the NYPD's 75th precinct stationhouse and imprisoned therein.

41.     The defendant officers imprisoned GOINS until his arraignment on October 16, 2013, on baseless charges filed in Kings County Criminal Court filed under docket no. 2013KN080223, said charges having been filed based on the false allegations of TEREPKA,

PRALGO, and MARTINEZ.  Said defendants initiated said prosecution with malice, and otherwise caused said prosecution to be commenced against plaintiff for the purpose of obtaining a collateral objective outside the legitimate ends of the legal process, to wit: in an effort to avoid discipline for the aforementioned acts of brutality and abuse of authority.

42.     TEREPKA, PRALGO, and MARTINEZ conspired to create and manufacture false evidence against GOINS, which TEREPKA conveyed to the Kings County District Attorney's Office causing said evidence to be used against GOINS in the aforementioned legal proceeding.

43.     Specifically, TEREPKA falsely swore, in a criminal court complaint filed in said prosecution, that GOINS "resisted a lawful arrest by flailing [his] arms and kicking [his] feet refusing to be handcuffed;" that he was informed by MARTINEZ that GOINS was "fighting with unapprehended others causing public alarm and annoyance;" and that he was informed by PRALGO that GOINS caused PRALGO "to become alarmed and annoyed."   Both MARTINEZ and PRALGO falsely swore in a supporting deposition filed in said prosecution that said allegations attributed to them were true.  All of the above described allegations are entirely false.

44.     The false allegations compelled GOINS to return to Kings County Criminal Court on multiple dates until February 25, 2015, when all of the baseless charges filed against GOINS were dismissed and sealed.

45.     The defendant NYPD officers either directly participated in and/or failed to intervene in the illegal conduct described herein.

46.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training, and supervising of its employees, and due to a custom, policy, and/or a practice of: unlawfully stopping and searching individuals; subjecting individuals to excessive

force; manufacturing false evidence against individuals in a conspiracy to justify their use of excessive force and abuse of authority; arresting innocent persons in order to meet "productivity goals" (i.e. arrest quotas); arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or falsely arresting individuals and engaging in a practice of falsification in an attempt to justify the false arrest and the use of excessive force.

47.     The aforesaid event is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, defendant CITY OF NEW YORK is aware (from said lawsuits as well as notices of claims, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK'S Civilian Complaint Review Board) that many NYPD officers, including the defendants: unlawfully stop and search individuals; subject individuals to excessive force; manufacture false evidence against individuals in a conspiracy to justify their use of excessive force and abuse of authority; arrest innocent persons in order to meet "productivity goals" (i.e. arrest quotas); arrest individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification in an attempt to justify the false arrest and use of excessive force.

48.     In addition, in another civil rights action filed in this court involving false allegations by NYPD officers, United States District Judge Jack B. Weinstein pronounced:

> Informal inquiry by the court and among judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. . . . [T]here

is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or police by the city approving illegal conduct of the kind now charged.

*Colon v. City of New York, et. al.*, 2009 WL 4263362, *2 (E.D.N.Y.).

49.     Moreover, the existence of the aforesaid unconstitutional customs and policies may further be inferred from the admission by former NYPD Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that NYPD commanders are permitted to set "productivity goals."

50.     Defendant CITY OF NEW YORK is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiffs' civil rights.

51.     Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, defendant CITY of NEW YORK has retained these officers, and failed to adequately train and supervise them.

52.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

53.     All of the aforementioned acts deprived plaintiff DESMON GOINS of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

54.     The acts complained of were carried out by the aforementioned individual

defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

55.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

56.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

57.     As a result of the foregoing, plaintiff DESMON GOINS sustained, *inter alia*, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of his liberty and constitutional rights.

58.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

59.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

60.     Defendants TEREPKA, MARTINEZ, and PRALGO arrested plaintiff DESMON GOINS without probable cause, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

61.     Defendants TEREPKA, MARTINEZ, and PRALGO caused plaintiff DESMON

GOINS to be falsely arrested and unlawfully imprisoned.

62.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

63.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64.     The level of force employed by defendants TEREPKA, MARTINEZ, and PRALGO was excessive, objectively unreasonable and otherwise in violation of plaintiff DESMON GOINS' constitutional rights.

65.     As a result of the aforementioned conduct of defendants TEREPKA, MARTINEZ, and PRALGO, plaintiff DESMON GOINS was subjected to excessive force and sustained physical and emotional injuries.

66.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Violation of Right to Fair Trial under 42 U.S.C. § 1983)

67.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68.     Defendants TEREPKA, MARTINEZ, and PRALGO created false evidence against

plaintiff DESMON GOINS.

69.     Defendants TEREPKA, MARTINEZ, and PRALGO utilized this false evidence against plaintiff DESMON GOINS in legal proceedings.

70.     As a result of defendant TEREPKA, MARTINEZ, and PRALGO's creation and use of false evidence, plaintiff DESMON GOINS suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

71.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Malicious Abuse of Process under 42 U.S.C. § 1983)

72.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "71" with the same force and effect as if fully set forth herein.

73.     Defendants TEREPKA, MARTINEZ, and PRALGO issued criminal process against plaintiff DESMON GOINS by causing his arrest and prosecution in Kings County Criminal Court.

74.     Defendants TEREPKA, MARTINEZ, and PRALGO caused plaintiff DESMON GOINS to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, to wit: to avoid discipline for their use of excessive force and abuse of authority, and thereby violated plaintiff's right to be free from malicious abuse of process.

75.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and

disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77.     Defendant NAPOLITANO had an affirmative duty to intervene on behalf of plaintiff DESMON GOINS, whose constitutional rights were being violated in his presence by other officers.

78.     Defendant NAPOLITANO failed to intervene to prevent the unlawful conduct described herein.

79.     As a result of the foregoing, plaintiff DESMON GOINS' liberty was restricted for an extended period of time, he was put in fear of his safety, he was subjected to excessive force and unlawful searches, and he was humiliated and compelled to appear in criminal court.

80.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

81.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "80" with the same force and effect as if fully set forth herein.

82.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

83. The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department included, but were not limited to, inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of plaintiff DESMON GOINS' rights as described herein. As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

84. The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department also included, but were not limited to: unlawfully stopping and searching individuals; subjecting individuals to excessive force; manufacturing false evidence against individuals in a conspiracy to justify their use of excessive force and abuse of authority; arresting innocent persons in order to meet "productivity goals" (i.e. arrest quotas); arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or falsely arresting individuals and engaging in a practice of falsification in an attempt to justify the false arrest and use of excessive force.

85. The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff DESMON GOINS.

86. The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff DESMON GOINS as alleged herein.

87. The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department were the moving force behind

the Constitutional violations suffered by plaintiff DESMON GOINS as alleged herein.

88.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department, plaintiff DESMON GOINS was unlawfully arrested, subjected to excessive force and deprived of his right to a fair trial.

89.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff DESMON GOINS' constitutional rights.

90.     All of the foregoing acts by defendants deprived plaintiff DESMON GOIN of federally protected rights, including, but not limited to, the right:

A.     Not to be deprived of liberty without due process of law;

B.     To be free from excessive force;

C.     To be free from false arrest/unlawful imprisonment;

D.     To be free from the failure to intervene;

E.     To receive his right to fair trial; and

F.     To be free from malicious abuse of process.

91.     As a result of the foregoing, plaintiff DESMON GOINS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff DESMON GOINS demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)      full and fair compensatory damages in an amount to be determined by a jury;

(B)      punitive damages in an amount to be determined by a jury;

(C)      reasonable attorneys' fees and the costs and disbursements of this action; and

(D)      such other and further relief as appears just and proper.

Dated: Brooklyn, New York
       December 14, 2015

                               LEVENTHAL LAW GROUP, P.C.
                               Attorneys for Plaintiff DESMON GOINS
                               45 Main Street, Suite 230
                               Brooklyn, New York 11201
                               (718) 556-9600

                               By:      s/_____
                                    JASON LEVENTHAL (JL1067)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

DESMON GOINS,

                              Plaintiff,

                                                  Docket No.:

        -against-

CITY OF NEW YORK, ROBERT MARTINEZ, Individually,
DAVID PRALGO, Individually, RADOSLAW TEREPKA,
Individually, and THOMAS NAPOLITANO, Individually.

                              Defendants.

--------------------------------------------------------------------------------X

**COMPLAINT**

**LEVENTHAL LAW GROUP, P.C.**
Attorneys for the Plaintiff
45 Main Street, Suite 230
Brooklyn, New York 11201
(718) 556-9600